UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-517-CHL

JOHN P. WADE, **Plaintiff,**

v.

COMMISSIONER OF SOCIAL SECURITY, **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the complaint (DN 1) of plaintiff John P. Wade ("plaintiff"). In his complaint, plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). *See* 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."). Plaintiff filed a Motion for Judgment on the Pleadings (DN 17) and supporting memorandum (DN 17-1), as well as a Fact and Law Summary (DN 17-2). The Commissioner also filed a Fact and Law Summary (DN 23).

The parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (*See* DN 8.) Therefore, this matter is ripe for review. For the reasons set forth below, the final decision of the Commissioner is affirmed.

I.  BACKGROUND

Plaintiff filed an application for supplemental social security benefits on June 24, 2013, alleging an amended disability onset date of June 24, 2013. (Tr. 61-62, 161.) On April 28, 2015,

1

Administrative Law Judge Dwight Wilkerson ("the ALJ") conducted a hearing in Louisville, Kentucky. (*Id*. at 32.) Plaintiff was present and represented by counsel Shawnee Franklin. (*Id*.) William Irvin, a vocational expert, also testified at the hearing. (*Id*.) In a decision dated May 29, 2015, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. In doing so, the ALJ made the following findings.

1. Plaintiff has not engaged in substantial gainful activity since June 24, 2013, the application date. (*Id*. at 22.)

2. Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, insulin dependent diabetes, and hypertension. (*Id*.)

3. Plaintiff does not have impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.)

4. After careful consideration of the entire record, the ALJ found that plaintiff has the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. 416.967(b) except no climbing of ladders, ropes, and scaffolding and only occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling. Plaintiff can occasionally reach overhead with the right upper extremity. (*Id*. at 23.)

5. Plaintiff is unable to perform any past relevant work. (*Id*. at 26.)

6. Plaintiff was born on September 17, 1961 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. (*Id*.)

7. Plaintiff has a limited education and is able to communicate in English. (*Id*.)

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that plaintiff is "not disabled," whether or not plaintiff has transferable job skills. (*Id.*)

9. Considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (*Id.*)

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since June 24, 2013, the date the application was filed. (*Id.* at 27.)

Plaintiff timely requested an appeal to the Appeals Council on or about July 15, 2015. (*Id.* at 16.) On June 10, 2016, the Appeals Council denied plaintiff's request for review. (*Id.* at 1.) At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Plaintiff timely filed this action on February August 11, 2016.

## II. DISCUSSION

The Social Security Act authorizes payment of supplemental social security benefits to persons with disabilities. Social Security Act, Supplemental Social Security Income, 42 U.S.C. §§ 1381-85 (2012). An individual shall be considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

### A. Standard of Review

In conducting its review, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Sec'y of Health and Human Servs.*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972)). Rather, the Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and that the correct legal standards were applied. 42 U.S.C. § 405(g); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011). If the answer is "yes," then the Court may not even inquire as to whether the record could support a decision the other way. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989).

"Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sec'y of Health and Human Servs.*, 2 F.3d 692, 695 (6th Cir. 1993) (quoting *Casey v. Sec'y of Health and Human Servs*., 987 F.2d 1230, 1233 (6th Cir. 1993)) (internal quotation marks omitted). Therefore, "[a] reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.

### B.   Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

> 1)   Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

4

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1 to Subpart P of Part 404 of this chapter? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5) Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id*.

The claimant bears the burden of proof with respect to the first four steps. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-23 (6th Cir. 2008). The burden shifts to the Commissioner at the fifth step to prove that there are available jobs in the national economy that the claimant is capable of performing. *Id*. at 423. The claimant, however, always retains the burden of proving lack of RFC. *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

**C.    Plaintiff's Contentions**

Plaintiff argues that the ALJ's RFC determination is not support by substantial evidence. More specifically, plaintiff argues that (1) the ALJ erred in determining that plaintiff can perform

light work; and (2) the ALJ failed to fully and fairly develop the record with respect to plaintiff's physical limitations. The Court will address each argument below.

### 1. RFC determination that plaintiff can perform light work

Plaintiff argues that the ALJ failed to properly weigh the opinion evidence of his family doctor, Dr. Robert Johnson, in determining the RFC. Plaintiff also appears to argue that the ALJ should have found that plaintiff was limited to sedentary work.

#### a. Opinions of Dr. Johnson

Dr. Johnson completed a RFC Questionnaire on March 31, 2015. In the RFC Questionnaire, Dr. Johnson opined that plaintiff could sit for four hours in a workday; stand three hours in a workday; required 10-12 unscheduled breaks throughout the workday for 15-30 minutes at a time; and would be absent from work more than four days a month. (Tr. 38-39.) Plaintiff asserts that that ALJ erred in giving Dr. Johnson's opinions little weight in his formulation of the RFC, including his determination that plaintiff could perform light work. Plaintiff points out that the ALJ incorrectly determined that Dr. Johnson only saw plaintiff once and therefore had no treating relationship with plaintiff. While not stated outright, the implication is that Dr. Johnson was a treating physician and therefore his opinions should have been accorded controlling weight.

Plaintiff is correct that the ALJ erroneously concluded that plaintiff only saw Dr. Johnson one time. The RFC Questionnaire completed by Dr. Johnson on March 31, 2015 indicated that he began seeing plaintiff in August 2014. (*Id*. at 388-89.) Thus, Dr. Johnson was, as is conceded by the Commissioner, a treating physician.

Treating sources must be given controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). If the treating source is not given controlling weight, then the "opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Id*. (citing 20 C.F.R. § 404.1527(c)(2)-(6)).[1]

20 C.F.R. § 416.927(c)(2) contains a procedural requirement that the Social Security Administration ("SSA") "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 416.927(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("The regulation requires the agency to 'give good reasons' for not giving weight to a treating physician in the context of a disability determination.") (citing 20 C.F.R. § 404.1527(d)(2)). This is otherwise known as the "treating physician rule." "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544-45 (quoting, in part, *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)) (internal quotation marks omitted). This requirement also ensures that the ALJ

---

[1] The Court notes that the regulations governing disability determinations for disability insurance and supplemental social security income are virtually identical and can be found at Title 20, Subpart P, Part 404 (disability insurance) and Title 20, Subpart I, Part 416 (supplemental social security income). As a result, case law citing a regulation in Subpart P, Part 404 is equally applicable to the corresponding regulation in Subpart I, Part 416.

applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Id*.

In general, a failure to articulate good reasons for rejecting a treating physician's opinion requires reversal and remand. *Wilson*, 378 F.3d at 546-47; *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009) ("The *Wilson* Court instructs that where the ALJ fails to give good reasons on the record for according less than controlling weight to treating sources, we reverse and remand unless the error is a harmless *de minimis* procedural violation."). This is because it "is an elemental principle of administrative law that agencies are bound to follow their own regulations. *Wilson*, 378 F.3d at 545.

Nonetheless, the Sixth Circuit has found three instances where the violation is *de minimus* and reversal and remand may not be required: (1) where a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of 20 C.F.R. § 416.927(c)(2) – the provision of the procedural safeguards of reasons – even though she has not complied with the terms of the regulation. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551, 2010 WL 1725066 (6th Cir. April 28, 2010) (citing *Wilson*, 378 F.3d at 547). "In the last [*i.e.*, third] of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. Aug. 28, 2006) and

8

*Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006)). The Commissioner argues that (1) and (3) apply here. The Court will address (3) first.

The Court finds that the ALJ gave good reasons for not giving Dr. Johnson's opinions controlling weight. The ALJ found that Dr. Johnson's opinions were inconsistent with the medical evidence in the record and plaintiff's reported relief with pain medication. The ALJ first noted that the objective medical evidence for the relevant time period was very limited. The ALJ observed that the record showed that, prior to the relevant period, plaintiff suffered a significant right arm fracture and right femur fracture. (Tr. 24.) An MRI of the lumbar spine showed *mild* degenerative changes at L4-5 and a small tear involving the right foraminal margin at L3-4; medical imaging revealed *moderate* joint arthritis in the right shoulder as well. (*Id*. at 24, 376.) As noted by the ALJ, however, this objective medical evidence showing mild degenerative changes and moderate joint arthritis in the right shoulder did not come close to supporting plaintiff's allegations of a debilitating physical condition and were therefore inconsistent with Dr. Johnson's imposition of severe physical limitations. (*Id*. at 25.)

The ALJ further noted that, while plaintiff's pain in his right shoulder and other parts of his body was documented, he had been prescribed narcotic pain medications, a pain pump, and upper extremity injections, and he had reported receiving relief from these measures. For example, as noted by the ALJ, in August 2014 plaintiff reported to his pain management specialist that, while his pain was not controlled as he would like, he "does get out and goes to the races." (*Id*. at 339). In records from December 2014 from the same provider, plaintiff reported that his pain was well controlled on his medications and that he was able to keep his normal activities and that he was better since the last office visit; in February 2015, plaintiff also

reported that his pain was well controlled on his present medications and that he was able to keep his normal activities. (*Id*. at 330, 333.) And, despite the ALJ's oversight with respect to Dr. Johnson's role as treating physician, the ALJ discussed Dr. Johnson's own medical records. In fact, Dr. Johnson's records from October and December 2014 indicated plaintiff reported improvement to his right shoulder pain with injections. (*Id*. at 290, 299.) In December 2014, plaintiff reported to Dr. Johnson that was doing well and feeling great. (*Id*. at 290.) Again, as noted by the ALJ, plaintiff's reported improvement with medication and ability to keep normal activities was wholly inconsistent with the severe physical limitations imposed by Dr. Johnson in the RFC Questionnaire.

Consequently, the Court finds that, in this instance, the ALJ's error in finding that Dr. Johnson was not a treating physician was *de minimus*. Importantly, the ALJ did not simply discount Dr. Johnson's opinions because he was not a treating physician. Rather, as demonstrated above, the ALJ provided the requisite good reasons for not giving Dr. Johnson's opinions in the RFC Questionnaire controlling weight. *See Friend*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused."). Therefore, any error committed here was harmless. Because the Court has found that the ALJ gave good reasons for discounting Dr. Johnson's opinions, there is no need to determine whether the first exception – whether those opinions were so patently deficient that the ALJ could not credit them – also applies.

### b. Failure to limit plaintiff to sedentary work

Plaintiff also avers that the record evidence, including Dr. Johnson's opinion, is more indicative of a RFC of sedentary, as opposed to light, work. Plaintiff appears to argue that, had he been limited to sedentary work, he would have been deemed disabled under the Medical-Vocational Guidelines. Specifically, plaintiff states, without expounding, that his "testimony along with the other evidence of record, including Dr. Johnson's opinion, is more indicative of an RFC of sedentary rather than light work." (DN 17-1 at 9.)

The Court has already determined that there were good reasons for discounting the opinion of Dr. Johnson. Furthermore, the ALJ supported his RFC finding with record medical evidence and took into account plaintiff's allegations to the extent that he found them credible. Thus, plaintiff's bare argument amounts to a disagreement with how the ALJ chose to weigh the conflicting evidence. As the Court has stated, it may not try the case de novo, nor resolve conflicts in evidence. *Garner*, 745 F.2d at 387. In other words, the Court may not disturb the ALJ's finding absent proof that it was not supported by substantial evidence, something plaintiff has not shown here. Therefore, plaintiff's unsupported argument fails.

### 2. Failure to fully and fairly develop the record

The ALJ considered the opinions of two state agency medical consultants who provided physical RFC assessments. The ALJ agreed with their ultimate conclusion of "not disabled," but afforded only some weight to the rest of their assessments. In particular, the ALJ found a more restrictive RFC than mandated by the state agency medical consultants. (Tr. 25-26.) The ALJ did so because the medical evidence, in addition to the combination of reported pain and medication taken, showed that plaintiff would need further limitation that those prescribed by the

state agency medical consultants; the ALJ also noted that neither of the state agency medical opinions took into account plaintiff's well-documented right upper extremity arthritis. (*Id.*)

Plaintiff argues that because the state agency consultants did not consider plaintiff's right upper extremity arthritis and the ALJ determined that plaintiff is more limited than indicated by the state agency consultants, the ALJ should have developed the record by ordering consultative examinations of him. Plaintiff further argues that because the ALJ gave little weight to the opinions of Dr. Johnson, the ALJ was obligated to order further consultative examinations to properly determine plaintiff's limitations. Plaintiff's arguments lack merit.

The claimant bears the ultimate burden of proving with sufficient evidence that she is disabled. 20 C.F.R. § 416.912(a). "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). Although not specifically stated, it is apparent that the ALJ had the requisite evidence to make a finding in this matter. *See Harris v. Comm'r of Soc. Sec.*, No. 1:11-CV-2785, 2012 WL 3656402, at *9 (N.D. Ohio Aug. 23, 2012) ("Although the ALJ has a duty to ensure that a reasonable record has been developed, it is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision regarding the claimant's disability status. Further, an ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination 'is *necessary* to enable the administrative law judge to make the disability

decision.'") (internal citations omitted). The ALJ reviewed plaintiff's MRI, diagnostic testing, and the few medical opinions of record, all of which permitted him to appropriately determine plaintiff's RFC.

Furthermore, the ALJ, not a medical expert, is responsible for the ultimate determination of a plaintiff's RFC. "The ALJ must evaluate a number of factors in determining a plaintiff's RFC, including the medical evidence and the plaintiff's testimony, and this evaluation is not limited to medical opinion evidence." *Raber v. Comm'r of Soc. Sec.*, No. 4:12 CV 97, 2013 WL 1284312, at *16 (N.D. Ohio Mar. 27, 2013). Moreover, the "Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010). Here, the ALJ did not completely ignore the opinions of the state agency medical consultants; rather, the ALJ, based on record medical evidence, afforded a more restrictive RFC than that determined by them. And, as the Court has discussed, the ALJ gave good reasons for giving the opinions of Dr. Johnson little weight in crafting the RFC. On top of that, the ALJ took into account the record medical evidence, as well as plaintiff's complaints of pain (to the extent he found them credible), when formulating the RFC. Consequently, the Court finds that the ALJ did not err by not ordering additional consultative examinations of him.

### III. CONCLUSION

For these reasons, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

(1) The final decision of the Commissioner of Social Security is **AFFIRMED** and this

action is **DISMISSED** with prejudice.

(2) A final judgment will be entered separately.

cc: Counsel of record